# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**WILLIAM M. POPE**
**MARK J. CRANDLEY**
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**JUDSON G. BARCE**
**HUNTER J. REECE**
**BONNIE J. ADAMS**
Barce & Reece, P.C.
Fowler, Indiana



FILED
Jan 24 2013, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM PEREIRA and | ) | |
| JOSEPH McCONNELL, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 04A05-1205-PL-241 |
| | ) | |
| MONICA PEREIRA, JOHN LeFEBRE and | ) | |
| KAREN LeFEBRE, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE BENTON CIRCUIT COURT
The Honorable Robert M. Hall, Special Judge
Cause No. 04C01-1104-PL-61

**January 24, 2013**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

William Pereira and Joseph McConnell appeal a summary judgment order which denied their complaint to quiet title in real estate acreage bequeathed by Joseph Sleeper ("Sleeper") and allowed inheritance of a share of the acreage by John LeFebre and Karen LeFebre. We affirm.

## Issue

A single issue is presented for review: whether the trial court erred in granting summary judgment, based upon a construction of Sleeper's will to conclude that he had not devised a contingent remainder, subject to the condition of outliving a life tenant, but rather had made a gift to a class, which included John and Karen LeFebre's mother, with a life estate intervening.

## Facts and Procedural History

Sleeper, who owned approximately 358 acres of land in Benton County, Indiana, executed a handwritten will on October 30, 1917 ("the Will"). Sleeper died in 1922 and the Will was submitted for probate on December 6, 1922.

Sleeper bequeathed to his wife, Eva Sleeper, a life estate in the acreage and, upon her death, a life estate to the children of Sleeper's friend, Ralph McConnell, specifically, Margaret McConnell and Joseph W. McConnell. Sleeper also designated alternative contingent beneficiaries to inherit the acreage in fee simple at the termination of the second life estate. In particular, the Will provided:

> Fourth: I will and bequeath, at the death of my said wife, Eva C. Sleeper, to Margaret I. McConnell, and Joseph W. McConnell, children of Ralph W.

2

McConnell, all the real estate I may own or die seized of situated in Benton County, Indiana, to have these rents and income from said real estate for and during their natural lives and should either of said children die before my said wife, Eva C. Sleeper, it is my will that the survivor shall inherit said rents and profits from said real estate, and at the death of both of said named children it is my will that said real estate shall pass to any child or children they may have surviving them, share and share alike in fee simple. Should said named children die without any issue left, it is my will that all of my said named and mentioned real estate shall be the sole and legal property of the Trustees of the Methodist Episcopal Hospital of the City of Indianapolis, Indiana, to have and to use the same if they may desire for said hospital use.

(App. 12.)

Eva Sleeper died on June 30, 1933, survived by both Margaret McConnell and Joseph W. McConnell. Thus, the McConnell siblings jointly inherited the second life estate.

Joseph W. McConnell died in November of 1989, survived by his children Joseph McConnell and Julia McConnell Tarr. Margaret McConnell died in January of 2011, survived by Monica Pereira, an adopted child, and William Pereira. Julia McConnell Tarr had died in September of 2007, survived by John LeFebre and Karen LeFebre (hereinafter, "the Grandchildren").

On April 19, 2011, Joseph McConnell and William Pereira (hereinafter, "the Children") filed a complaint to quiet title, naming as defendants Monica Pereira and the Grandchildren. The Estate of Julia McConnell Tarr moved to intervene. The parties, disputing the construction of the fourth paragraph of the Will, filed cross-motions for summary judgment.

On December 22, 2011, argument was heard on the cross-motions for summary judgment. On April 20, 2012, the trial court entered summary judgment, concluding that the

Grandchildren could collectively receive a one-third share in the acreage (that portion which would have been inherited by their mother, Julia McConnell Tarr, had she survived at the termination of the life estate).[1] This was based upon the trial court's construction of the Will as "contemplat[ing] a generation skipping vesting process so that the death of either Margaret I. Pereira (McConnell) or Joseph W. McConnell establishes the class to which that ancestor's interest passes and thus closes the class by the ancestor's death and that both ancestors need not die before the class is determined." (App. 6.)

The Children appeal.

## Discussion and Decision

### I.  Standard of Review

In reviewing a trial court's ruling on summary judgment, we stand in the shoes of the trial court, and apply the same standards in deciding whether to affirm or reverse summary judgment. Warren v. Warren, 952 N.E.2d 269, 272 (Ind. Ct. App. 2011).  Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ind. Trial Rule 56(C).  We may affirm a grant of summary judgment on any theory supported by the designated materials. Gilman v. Hohman, 725 N.E.2d 425, 428 (Ind. Ct. App. 2000), trans. denied.

---

[1] The trial court concluded that, due to the "stranger to adoption rule," in effect at the time Sleeper executed his will, Monica Pereira could not take under the Will. (App. 6.)  The stranger to the adoption rule provides that when a person makes provision in his will for a child or children of some person other than himself, he will be presumed not to have included an adopted child or children of such other person, unless there is something in the will or extraneous circumstances to rebut that presumption. Paloutzian v. Taggart, 931 N.E.2d 921, 924 (Ind. Ct. App. 2010).  Monica Pereira has not challenged on appeal the trial court's application of this rule to the 1917 will.

4

Here, the parties agree that there is no disputed issue of fact and that the question to be determined is one of testamentary intent. The interpretation, construction or legal effect of a will is a question of law to be determined by the court. In re Estate of Owen, 855 N.E.2d 603, 608 (Ind. Ct. App. 2006). Accordingly, this Court owes no deference to the probate court's legal conclusions. Id.

The testator's intent is controlling, and is not to be frustrated so long as it is not contrary to law. Myers v. Ellerbusch, 746 N.E.2d 408, 409 (Ind. Ct. App. 2001). "The paramount objective in construing a will is to determine and give effect to the testator's true intent as expressed in the will." Id. In order to determine intent, the Court looks to the four corners of the will and the language used in the instrument. Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos, 895 N.E.2d 1191, 1197 (Ind. 2008). When construing the language, the court should strive to give effect to each provision, clause, term, or word if possible. Id. A general intent in a will is to be carried into effect at the expense of any particular intent and where the testator has expressed conflicting intents, the most important prevails. Id.

## II. Analysis

There is no dispute regarding the authenticity of the Will; nor are there relevant facts in dispute. The parties agree that the language of the Will conveys successive life estates and creates a contingent remainder in fee. A remainder is a future interest arising in a third person. Lewis v. Clifton, 837 N.E.2d 1016, 1018 (Ind. Ct. App. 2005). A contingent remainder "is merely the possibility or prospect of an estate which exists when what would

5

otherwise be a vested remainder is subject to a condition precedent, or is given to an uncertain person or persons." Id. at 1019 (Ind. Ct. App. 2005) (citation omitted). A remainder is vested when there is an immediate right of present enjoyment or a present fixed right of future enjoyment; that is, when it is given to an ascertained person and is not subject to a condition precedent. Bailey v. Bailey, 142 Ind. App. 119, 127, 232 N.E.2d 373, 378 (1967).

The disputed matter is the satisfaction of the contingency upon which Julia McConnell Tarr's interest would vest: whether it was upon her birth or whether she was required to outlive Margaret Connell, the last of the life tenants to die. If Julia McConnell Tarr received no interest or estate, then it could not be inherited by Grandchildren. The Children and Grandchildren ascribe different meanings to the phrase "and at the death of both of said named children it is my will that said real estate shall pass to any child or children they may have surviving them, share and share alike in fee simple." (App. 12.)

According to the Children, the plain language requires that any child of the McConnell siblings must survive "both" the siblings in order to receive a share and because Julia McConnell Tarr did not survive her aunt, she was not a child "they" had surviving and Julia's estate and the Grandchildren have no claim to the acreage. The Children also observe that the Will employed language "share and share alike" as opposed to "per stirpes,"[2] suggesting that Sleeper did not contemplate inheritance by an additional generation.

---

[2] Per stirpes means literally by roots or stocks, by representation, and denotes the method of dividing an intestate estate where a class or group of distributes take the share which their ancestor would have been entitled to. Matter of Estate of Walters, 519 N.E.2d 1270, 1272 (Ind. Ct. App. 1988), trans. denied.

The Grandchildren deny that the language of the Will "plainly" expresses the testator's intent to condition vesting upon the survival of all life tenants. According to the Grandchildren, "both" and "they" may be read as singular because an individual is commonly referred to as "they" and because Sleeper would not have anticipated that biological siblings would have children in common that "they" would have surviving. Appellee's Brief at 4. They also strenuously assert that the law prefers vesting to contingency and Sleeper's intention to convey an estate in fee simple[3] must be given effect.

The Grandchildren maintain that the trial court correctly found the Will to be ambiguous. They further contend that the trial court properly construed the Will to provide that Julia McConnell Tarr became a vested member of the remainder class at her birth or, at the latest, when her father, Joseph W. McConnell, died.

It has been observed: "Indiana law favors the early vesting of an estate." Lewis, 837 N.E.2d at 1019. Nonetheless, a testator "undoubtedly has the right, within legal limitations, to fix the time of vesting of any estate created by him." Hayes v. Second Nat'l Bank of Richmond, 176 Ind. App. 299, 301, 375 N.E.2d 647, 649 (1978). Ultimately, whether a particular estate or interest is vested or contingent depends upon the intention of the testator as interpreted from the will. Id.

The Grandchildren contend that Sleeper's intent of early vesting is evident from his conveyance "in fee simple." Arguing that "the importance of the term 'in fee simple' cannot be ignored," Appellee's Brief at 11, they direct our attention to Alsman v. Walters, 184 Ind.

---

[3] A "fee simple" has been described as "the entire and absolute interest and property in land." Brown v. Freed, 43 Ind. 253, 256 (1873).

7

565, 106 N.E. 879 (1914) and Coquillard v. Coquillard, 62 Ind. App. 426, 113 N.E. 474 (1916).

Alsman involved a life estate carved out with a gift over to children of the life tenant. Luke Walters' will had contained the provision:

> I give and bequeath to my son, Francis M. Walters, during his natural life and after his death to his children surviving him in fee simple the following tract of land[.]

106 N.E. at 880. When the will was probated, Francis Walters had two children, William Walters and Nancy Walters. Nancy Walters died intestate in 1895, leaving Alsman as her sole descendant. After the death of the testator, Francis Walters had four other children. The trial court concluded that William Walters, the sole surviving child of the life tenant, was the owner of the land. His counsel claimed that on the death of the testator, the remainder vested in the children of the life tenant, but that the title taken was a conditional fee, which could vest absolutely only on the death of Francis Walters. See id.

On appeal, the Indiana Supreme Court observed that a fee may be held in abeyance but "it was ever odious and never recognized unless in cases of extreme necessity." Id. The Court concluded that a gift was made to a class – children – with a life estate intervening and "[w]here such a gift is immediate, the persons constituting the class are ascertained as of the date of the death of the testator." Id. Where a life estate is carved out, with a gift over to children of the life tenant, the gift not only embraces the children living at the testator's death, but also all who may come into existence during the life tenancy. Id. The children

alive at the testator's death take an immediately vested interest subject to a diminution of their shares to let in such others as may be born during the life tenancy. Id.

The Court reiterated that the language of a will is to be considered in its entirety. Id. The testator had made a gift "to his children surviving him" and had also devised the estate in "fee simple." Id. The Court recognized that "the term 'surviving him' might better denote an intent to limit the vesting of the absolute estate in those children only who might survive the first taker." Id. at 881. However, in considering the language used in its entirety, including the description "fee simple," the Court opined that a clear intention to create an estate limited to survivorship of the first taker was not manifested; therefore, the Court looked to established rules for construction of ambiguous devises, including the rule that the law looks with disfavor on postponing estates. Id. After consideration of relevant precedent, the Court concluded:

> We are of the opinion that on the death of Luke Walters the fee-simple title to the land in question vested absolutely in appellee and appellant's mother, subject to diminution to let in after-born children, and consequently the court erred in concluding that appellee is the sole owner of the land.

Id. at 882.

The construction that upon the death of the testator, fee simple title to land vested absolutely in the life tenant's children, subject to diminution to let in after-born children, has since been affirmed in factually similar cases. See Aldred v. Sylvester, 184 Ind. 542, 111 N.E. 914 (1916), Moorman, et al. v. Moorman, et al., 156 Ind. App. 606, 297 N.E.2d 836 (1973), Busick v. Busick, 65 Ind. App. 655, 115 N.E. 1025 (1917), Coquillard, 62 Ind. App. 426, 113 N.E. 474.

9

In particular, Coquillard involved a very similar factual situation to the instant case. Alexis Coquillard, Sr.'s will devised a life estate to his wife, a subsequent life estate to his sons, to be held by them "share and share alike," and on the death of his "several children," the remainder of the share of each child was given in fee simple to such children as the children/life tenants might leave surviving them. Id. at 482. No such child had been born at the time of the testator's death.

Accordingly, the remainder in fee was limited to a person or persons not ascertained and it was therefore contingent. Id. at 483. The Court was required to determine the contingency upon which the contingent remainder in fee would vest: "whether, in the case of either son, the birth of a child or children to him within his lifetime is sufficient to that end, as to the undivided one-half of the lands involved, or whether such remainder will so vest only on the decease of said son leaving a child or children surviving him." Id.

The Court cited a common law principle that a valid remainder might be limited on a particular life estate to unborn children and, on their birth during the life tenancy, the remainder would immediately vest. Id. The intent of the testator was given effect: "The testator evidently contemplated that this real estate should be a source of income to the widow during her life, and thereafter to the sons during their respective lives, and that the corpus of the estate should be preserved to the unborn children of the latter." Id. at 485. Ultimately, the Court held, "under authority of Alsman v. Walters," that while the estate at issue in the case then at bar (which was limited to the unborn children of either son) was a contingent remainder in fee, the estate would vest as a remainder in fee on the birth of a child

to a son, subject to be opened up to let in other children of such son afterwards born alive. Id. at 483.

More recently, in Pechin v. Medd, et al., 476 N.E.2d 526 (Ind. Ct. App. 1985), trans. denied, a panel of this Court considered Pechin's argument regarding the following testamentary language:

> To my daughter, Leona May Johnson, and her children, my farm in Anderson Township, Rush County, Indiana, containing one hundred and thirty-three (133) acres more or less. The said Leona May Johnson to have a life estate in said farm with the remainder in fee simple to her surviving children.

Id. at 528. The appellant, Pechin, contended that the phrase "with the remainder in fee simple to her surviving children" meant that Leona Johnson's children had a contingent remainder, subject to the condition that they outlive their mother, the life tenant. Id. at 529. Finding the will ambiguous because the farm was initially devised in fee simple to Leona and her children, but then the devise was refined to grant a life estate and a remainder in fee simple, this Court applied the holding of Alsman. Id. at 529-30.

The Pechin court found its conclusion to be "bolstered by a closer examination of [the] will," wherein the testatrix provided for the situation in which the children did not outlive their parent, "lend[ing] credence to the conclusion that [the testatrix] intended that the remainder interest of the grandchildren … vest upon her death and not upon the life tenant's death." Id. at 530. The Court's examination of the will led the Court to conclude, as in Alsman, "'nothing in this will warrants the imputation to testator of an intent to make the fee simple title of this land a grand prize to the victor in his grand-children's race with death.'" Id. (quoting Alsman, 184 Ind. at 575, 106 N.E. at 879).

11

Here, the Children point out that Margaret and Joseph W. McConnell were the children of Sleeper's friend, and thus their children and Grandchildren were not the natural object of Sleeper's bounty. Nonetheless, out of affection for his friend, Sleeper sought to provide for his friend's children and their children. The Will does not evince an intention that those descendants be treated with varying degrees of regard because they are not Sleeper's biological descendants.

Here, the Will devises a fee simple estate but also employs limiting language of vesting or enjoyment: "upon the death of both." Also, the Will includes the phrase "share and share alike" as opposed to "per stirpes." Appellate courts have employed certain rules "where particular and future estates are created," more specifically:

(1)     The law so favors the vesting of estates at the earliest opportunity and is so averse to a postponement thereof that they will be deemed as vesting at the earliest possible period, in the absence of a clear manifestation of the contrary intention;

(2)     words of postponement are presumed to relate to the beginning of the enjoyment of the estate, rather than to its vesting;

(3)     words of survivorship are presumed to relate to the death of testator, rather than that of the first taker, if they are fairly capable of such interpretation.

Aldred v. Sylvester, 184 Ind. 542, 548, 111 N.E. 914, 916 (1916). Also, courts will not construe a limitation into an executory devise[4] when it can take effect as a remainder, nor construe a remainder to be contingent where it can be taken as vested. Id.

---

[4] An executory devise has been defined as: "An interest in land, created by will, that takes effect in the future and depends on a future contingency; a limitation, by will, of a future estate or interest in land when the limitation cannot, consistently with legal rules, take effect as a remainder." Black's Law Dictionary 463 (7th Ed. 1999).

12

In light of the precedent of <u>Alsman</u> and <u>Coquillard</u>, we likewise conclude that the devise in fee simple resulted in an immediate gift, with an intervening life estate. The intended class, the McConnell siblings' children, was identified and had no such child been born, the alternative beneficiary was Methodist Hospital of Indianapolis. However, the McConnell siblings were not childless. Vesting occurred when the first child in the class was born; however, the class was open and the interest of the first child was subject to diminution of shares to let in others born during the life tenancy. When Julia McConnell Tarr was born, she was a class member. The trial court properly found that she had a vested interest, not contingent upon outliving the last surviving life tenant.

**Conclusion**

The trial court properly granted summary judgment in favor of the Grandchildren.

Affirmed.

VAIDIK, J., and BROWN, J., concur.

13